## SWAN v. CONSOLIDATED WATER CO. OF POMONA et al.

Circuit Court of Appeals, Ninth Circuit.
October 29, 1928.

No. 5479.

972

Robert E. Austin and John N. Helmick, both of Los Angeles, Cal., for appellant.

Kemper Campbell and Chas. L. Nichols, both of Los Angeles, Cal., for appellees.

Before GILBERT, RUDKIN, and DIE-TRICH, Circuit Judges.

RUDKIN, C. J. This was a bill by a minority stockholder, against the corporation of which he is a stockholder and others, for an accounting, for the appointment of a receiver, and for the dissolution of the corporation and the distribution of its assets. Following the jurisdictional averments, the complaint alleged that the defendant Consolidated Water Company of Pomona is a corporation organized and existing under the laws of the state of California, with a capital stock of $500,000, divided into 5,000 shares, of the par value of $100 each; that the plaintiff is the owner of 65 shares, of the value of more than $120 each; that the plaintiff and defendants are all of the stockholders of the corporation, and that plaintiff brings the action for his own benefit and for the benefit of all other stockholders who care to join therein, and on behalf of the corporation; that the corporation was organized for the purpose, as set forth at length in its articles of incorporation, of acquiring wells, pipe lines, flumes, ditches, and water privileges in the counties of Los Angeles and San Bernardino, California, for the supplying of water for household, domestic, irrigation, and other public and private purposes to the inhabitants of San Jose township and vicinity, in the county of Los Angeles, state of California, and more particularly to the inhabitants of the city of Pomona; that immediately after its organization the corporation proceeded to acquire wells, pipe lines, flumes, ditches, and water privileges, necessary and convenient for supplying the inhabitants of San Jose township and vicinity, and especially the inhabitants of the city of Pomona, with water for public and private purposes, and has since, until about a year ago, so continued to acquire such necessary and convenient properties, and has furnished water to the inhabitants of San Jose township and the city of Pomona until or about the 5th day of October, 1926; that the business of the corporation was prosperous and profitable, and from a small investment the business and assets increased until on said 5th day of October, 1926, the value of its wells, pipe lines, flumes, ditches, water privileges, franchises, business, and properties employed in furnishing water was in excess of the sum of $800,000, and its annual net profit was in excess of $50,000; that the defendant Lathrop now has, and for more than 10 years last past has had, absolute control of the corporation and its affairs, through dummy directors, and has used the corporation and its assets for his own purposes, to the detriment of the corporation and the other stockholders; that the corporation has earned profits of more than $500,000 in excess of its losses and running expenses, but no dividends have ever been paid, except two, aggregating $30,000, and that the balance of the earnings of the corporation have been paid out to Lathrop and his friends under the guise of salaries and compensation for services, to the great detriment of the plaintiff and other stockholders; that for more than 10 years last past Lathrop had caused the corporation to pay him a salary of $400 per month, and to pay to Emily Grady Gridley, now deceased, a salary of $250 per month; that Gridley did nothing whatever of value for the corporation, and Lathrop rendered no service commensurate with the salary so paid; that prior to the 29th day of December, 1926, Lathrop had diverted funds belonging to the corporation, aggregating more than $20,000, to the Pacific Land & Cattle Company, a corporation owned by Lathrop and members of his family; that on the 29th day of December, 1926, Lathrop caused the board of directors of the corporation to vote him the above sum in cancellation of such indebtedness, and on the same day he likewise caused the board of directors to vote him an

additional sum of $2,500 to satisfy an over-draft of his on the books of the company, and also the sum of $1,500 to be voted to Gridley to satisfy an overdraft on her account on the books of the company; that these amounts were credited to the accounts of Lathrop, the Pacific Land & Cattle Company, and Gridley, and the obligations above mentioned were thereby discharged; that neither Lathrop nor Gridley had rendered any services whatsoever to the corporation to justify the payments; that plaintiff is informed and believes that at many other times, and in many other ways, the assets of the corporation have been diverted by Lathrop; that plaintiff has not demanded of the officers of the corporation that they bring suit against Lathrop for an accounting of the matters above set forth, because of the fact that they are subservient to his will, and would refuse to do so, and such demand would be useless; that during the year 1926 the directors of the corporation were certain persons named in the bill; that the defendant Lathrop owned 2,389½ shares in the corporation, and was one of the executors of the estate of Gridley, which owned 2,080 shares; that certain other relatives of the defendant Lathrop owned a small number of shares, as set forth, and that none of the directors, except Lathrop, had any substantial interest in the corporation, but each of them held office as the tool of Lathrop, was subservient to his will, and as director took such action as Lathrop directed, without any independent thought of his own for the welfare of the corporation.

It is then alleged that the property of the corporation was sold during the latter part of 1926; but, inasmuch as the plaintiff does not question the sale, the allegations in relation thereto are not deemed material. It is next averred that by the sale and transfer of the water system the corporation wound up and completed its business, its purpose was fulfilled, there was then and now is no reason for its continued existence, and it should be dissolved and its assets distributed to its stockholders; that the corporation more than a year ago paid its indebtedness, wound up and completed its business, and now has on hand in cash and securities in excess of $650,000; that during all that period the corporation has been in condition to be dissolved and its assets distributed to its stockholders, but Lathrop has refused to bring about its dissolution, or permit it to be done; that on July 28, 1927, plaintiff demanded of Lathrop, the corporation, and its board of directors that they immediately take such action as might be necessary to bring about the dissolution of the corporation and the distribution of its assets among its stockholders, but they and each of them refused and neglected to do so, or to take any action relative thereto; that certain resolutions were offered, directing the officers and directors of the corporation to take such action as might be necessary to bring about its dissolution, but such resolutions were voted down; that Lathrop was one of the executors of the Gridley estate, owning 2,080 shares of the capital stock of the corporation, and as such executor refused to vote such stock in favor of the resolution, as requested by the legatees and beneficiaries under the will; that Lathrop, for the purpose of promoting his own personal interest, and for the purpose of enabling himself to better use the corporation and its assets for his own purposes, has moved its principal place of business from the city of Pomona to the city of Los Angeles, has determined to change its name and to cause it to engage in other and different lines of business, and has, as plaintiff is informed and believes, loaned large amounts of the corporation's money to the Pacific Land & Cattle Company, a corporation owned by Lathrop and members of his family, and has otherwise loaned its funds to great advantage to himself; that Lathrop, by reason of his mismanagement of the corporation, his diversion of its assets, his disregard of the rights and interests of those whose property and interests come under his control, is not a fit or proper person to have control of the property or interests of the plaintiff, or of the other minority stockholders of the corporation; that, unless the court takes charge of the corporation and its assets, Lathrop will further divert them from their proper use to other and different uses and to his own purposes, and plaintiff will continue to be deprived of the use and benefit of his property, and will suffer a total loss thereof, as will all the other minority stockholders; and that the suit is not a collusive one, to confer on the court jurisdiction of a case of which it would not otherwise have cognizance.

The defendants interposed a motion to dismiss on the general ground that the complaint did not state facts sufficient to constitute a cause of action in equity against the defendants, or any of them. This motion was granted, and from the decree of dismissal the present appeal is prosecuted.

The complaint abounds in generalities

and conclusions, and complies in no respect with the plain and simple requirements of the Equity Rules; but this in itself would not warrant a dissmissal, if any cause of action is in fact stated. We will now take up the different averments upon which the right to equitable relief is predicated. The allegation that the appellee Lathrop has had absolute control of the corporation and its affairs, through dummy directors, and that he has used the corporation and its assets for his own purposes, to the detriment of the corporation and other stockholders, is entirely too general, and states no cause of action. The averment that the net earnings of the corporation, amounting to more than $500,000, save the $30,000 paid out in dividends, have been paid to Lathrop and his friends under the guise of salaries and compensation for services, is equally unavailing. As a stockholder, the appellant has access to the books and records of the corporation, and, if money has been improperly diverted, it was incumbent upon him to state the time and manner of the diversions, the sums diverted, and the names of the persons to whom the diversions were made. The allegation that for more than 10 years last past Lathrop has caused to be paid to himself a salary of $400 per month, and that he rendered no service commensurate with such salary, involves a mere conclusion of the pleader, and states no cause of action. The complaint should allege the nature of the services performed and their value, so as to enable the court to say whether the salary was so excessive as to warrant the conclusion that the conduct of the parties concerned was fraudulent. We might add in this connection that it appears elsewhere throughout the complaint that Lathrop has been the guiding spirit in a water company with assets of nearly $1,000,000, and a salary of $400 per month for such services would not seem to be excessive. The same may be said of the $250 salary per month paid to Gridley, now deceased. There is a general allegation that she did nothing whatever of value for the corporation, but there is no allegation as to what she did in fact or the capacity in which she acted or was paid.

The nearest approach to a cause of action is perhaps found in the allegation that Lathrop caused the board of directors of the corporation to vote him the sum of more than $20,000 in cancellation of an indebtedness of the Pacific Land & Cattle Company to the corporation, and that he caused the board of directors to vote him the further sum of $2,500 to satisfy his overdraft on the books of the company and the sum of $1,500 to satisfy a like overdraft on the part of Gridley. There is an averment that neither Lathrop nor Gridley had rendered any service whatever to the corporation to justify these payments, but, for aught that appears in the complaint, there may have been other and adequate considerations. As already stated, the sale of the property of the corporation is not challenged or questioned, and the allegations with reference thereto are entirely immaterial. The complaint contains a general allegation as to the purpose for which the corporation was formed, but the articles of incorporation are not pleaded, and there is no averment that the corporation did not possess powers other than those enumerated. The allegations, therefore, that the corporation has completed its business and fulfilled its mission, and that the appellee Lathrop intends to engage in another business not authorized by the articles, are mere conclusions. There is a further allegation that the corporation has loaned to the cattle company, owned by Lathrop and members of his family, large sums of money; but there is no allegation that the cattle company is insolvent or that the loans are not collectible. It may be, of course, that the corporation was without authority to loan money at all, but there is no such averment in the complaint. There is likewise the allegation that Lathrop has voted the stock of the Gridley estate, of which he is one of the executors, in his own interest and contrary to the will and wishes of the legatees; but, if he has violated his trust in that regard, the beneficiaries of the estate have their remedy in the court administering the trust, and a stranger will not be heard to complain in this court.

We have now covered the principal allegations of the pleading and for the reasons stated we think the complaint is without substantial equity.

The decree of the court below is therefore affirmed.